

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00840-CR

The **STATE** of Texas,
Appellant

v.

Paul **GUZMAN**,
Appellee

From the County Court at Law No. 14, Bexar County, Texas
Trial Court No. 378251
Honorable Bill C. White, Judge Presiding

Opinion by:   Sandee Bryan Marion, Justice

Sitting:   Catherine Stone, Chief Justice
   Sandee Bryan Marion, Justice
   Marialyn Barnard, Justice

Delivered and Filed:  July 9, 2014

REVERSED AND REMANDED

At issue in this appeal is whether the trial court erred when it granted appellee's motion to suppress.  Because we conclude the trial court erred in finding the unavailability of the nurse who performed the blood draw violated appellee's right to confront witnesses, we reverse and remand.

## BACKGROUND

Appellee, Paul Guzman, was charged with driving while intoxicated.  The State conducted a blood draw in order to ascertain appellee's blood alcohol concentration ("BAC").  Appellee filed a motion to suppress the results, arguing that the death of Karen Eley, the nurse who performed

the blood draw, prevented him from confronting her as a witness. Specifically, appellee's motion to suppress alleged Eley's "expertise as a professional is necessary to determine upon cross-examination whether the draw was performed correctly," and under *Bullcoming v. New Mexico*,[1] "[appellee] is entitled to question Ms. Eley and not a surrogate."

The trial court held a hearing on the motion where the State and the defense presented argument. No witnesses testified. During the hearing, the State argued Eley's testimony was not required because the State is only required to prove chain of custody, and any objection to Eley's failure to testify would go to the weight rather than the admissibility of the evidence. The State further argued it would satisfy the chain of custody through the testimony of the arresting officer who was present when the blood draw was performed, and through the testimony of Veronica Hargrove, the toxicologist who performed the blood test analysis. The State also asserted Eley's supervisor, Shari Taylor, would testify to the proper procedure when conducting a blood draw. The State acknowledged Taylor was not present when Eley performed the blood draw and would not testify whether the proper procedure was followed in this particular case. Additionally, the arresting officer would testify to his personal observations with respect to the blood draw, and would be able to refresh his memory by reviewing the checklist he filled out when he observed Eley perform certain functions. The State acknowledged the arresting officer did not have any special training regarding the proper techniques and procedures of a blood draw. Finally, the State advised the trial court it would not seek to admit Eley's affidavit because she would be unavailable to testify.

Appellee argued there were two issues before the court, chain of custody and whether proper procedures were followed. Such procedures included how long the tourniquet was applied,

---

[1] *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011).

whether there was any hemo-concentration, whether a vein or an artery was pierced, whether hemolysis occurred, whether the chemicals in the vial were properly mixed, the gauge of the needle used, and the type of chemicals used to sterilize the blood draw site. Appellee argued not following the correct procedures could lead to erroneous results, resulting in a higher BAC. Appellee argued the only person with personal knowledge of whether the proper procedures were used was Eley, and her absence violates his right to confront a witness against him under the rationale of *Bullcoming*.

The trial court granted appellee's motion to suppress and issued the following findings of fact and conclusions of law:

> The court finds that under [Texas Transportation Code section 724.017], the person drawing the blood must have special training.

> The court finds that under [section 724.017], the person drawing the blood must follow "recognized medical procedures" or face potential liability for any damages.

> The court finds that the law specifies only that the officer may order the blood draw, but he is not required to have any special training regarding the "recognized medical procedures." The State's position in this case is that the officer in this case did not have any special training concerning these "recognized medical procedures."

> The court finds that there is no assurance under the law that the officer will be trained to recognize the necessary medical procedures during the blood draw. In this case the officer could not recognize the necessary medical procedures because he was not trained to do so. Therefore, the officer may not testify that Ms. Eley followed "recognized medical procedures."

> The court finds that unless Ms. Eley's supervisor was present during the blood draw procedure in this case, the supervisor cannot know whether Ms. Eley followed "recognized medical procedures." Ms. Eley's supervisor was not present during the blood draw procedure in this case.

> The court finds that the State is unable to show that the blood specimen was taken pursuant to [Tex.] Transp. Code § 724.017.

> The court finds that Ms. Eley's expertise as a professional is necessary to determine on cross-examination whether the blood draw was performed correctly.

The court finds that the defendant is entitled to question Ms. Eley herself and not a surrogate who is unqualified to testify concerning whether she followed "recognized medical procedures" within the meaning of Tex. Transp. Code § 724.017. *Bullcoming v. New Mexico*, __ U.S. __, 131 S. Ct. 2705 (2011).

Since the evidence of the blood draw is proposed by the State to be used in evidence against the defendant herein, the defendant will be denied the right to confront and cross examine his accuser in violation of the United States Constitution, Amendment VI, XIV; Tex. Const. Art. I, §§ 10, 13, 19; and Art. 38.23, Tex. Code Crim. Proc.

IT IS THEREFORE ORDERED that the defendant's motion to suppress is hereby GRANTED.

## STANDARD OF REVIEW AND APPLICABLE LAW

When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the ruling. *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011). If the trial court, as here, makes findings of fact, we determine whether the evidence supports those findings. *Id*. We then review the trial court's legal rulings de novo unless the findings are dispositive. *Id*.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This procedural guarantee bars the admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 54 (2004); *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013). The threshold question in assessing an alleged Confrontation Clause violation is whether the complained of evidence is testimonial in nature. *Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004); *see also Mitchell v. State*, 419 S.W.3d 655, 661 (Tex. App.—San Antonio 2013, pet. ref'd) ("Therefore, to trigger the protections afforded by the Confrontation Clause, an out-of-court statement must be made by an absent witness and be testimonial in nature."). Testimonial statements include those "that were made under

- 4 -

circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52; *Alcaraz v. State*, 401 S.W.3d 277, 280 (Tex. App.—San Antonio 2013, no pet.). Forensic reports regarding blood alcohol analysis are considered testimonial, and the analysts who performed the tests are witnesses for purposes of the Sixth Amendment. *See Bullcoming v. State*, 131 S. Ct. 2705, 2717 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009); *Adkins v. State*, 418 S.W.3d 856, 862 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

### TEXAS TRANSPORTATION CODE SECTION 724.017

Section 724.017 provides:

(a) Only the following may take a blood specimen at the request or order of a peace officer under this chapter:

    (1) a physician;
    (2) a qualified technician;
    (3) a registered professional nurse;
    (4) a licensed vocational nurse; or
    (5) a licensed or certified emergency medical technician-intermediate or emergency medical technician-paramedic authorized to take a blood specimen . . . .

(a-1) The blood specimen must be taken in a sanitary place.

(b) If the blood specimen was taken according to recognized medical procedures, the person who takes the blood specimen under this chapter, the facility that employs the person who takes the blood specimen, or the hospital where the blood specimen is taken is immune from civil liability for damages arising from the taking of the blood specimen at the request or order of the peace officer or pursuant to a search warrant as provided by this chapter and is not subject to discipline by any licensing or accrediting agency or body. This subsection does not relieve a person from liability for negligence in the taking of a blood specimen. The taking of a specimen from a person who objects to the taking of the specimen or who is resisting the taking of the specimen does not in itself constitute negligence and may not be considered evidence of negligence.

TEX. TRANSP. CODE ANN. § 724.017(a), (a-1), (b) (West Supp. 2013).

The State asserts section 724.017 is inapplicable in this case because the blood draw was conducted pursuant to a warrant, and attached a copy of the warrant when it filed "State's Response to Defendant's Order Granting Defendant's Motion to Suppress with Findings of Fact and Conclusions of Law." The Court of Criminal Appeals has previously held Chapter 724 of the Texas Transportation Code is inapplicable when a draw blood is performed pursuant to a warrant. *State v. Johnson*, 336 S.W.3d 649, 661 (Tex. Crim. App. 2011) (citing *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002)). Additionally, neither party asserts this case involves a violation of section 724.017. Eley's qualifications were not challenged at the suppression hearing, nor are they challenged on appeal, and both parties agree the State does not have the burden to show the blood draw was performed in compliance with section 724.017. Instead, the focus of appellee's argument at trial and on appeal is that his Sixth Amendment right to confront witnesses would be violated if he does not have an opportunity to cross-examine Eley, and therefore, the BAC results should be suppressed. Accordingly, we conclude section 724.017 is inapplicable in this case.

CONFRONTATION CLAUSE

In its findings of fact and conclusions of law, the trial court relied on the rationale of *Bullcoming* in granting appellee's motion to suppress and finding appellee "will be denied the right to confront and cross examine his accuser." In *Bullcoming*, the issue before the Supreme Court was "whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact— through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Bullcoming*, 131 S. Ct. at 2710. Bullcoming was charged with driving while intoxicated and the prosecution introduced a forensic laboratory report certifying Bullcoming's BAC was above the threshold for aggravated driving while intoxicated. *Id*. at 2709. The report contained a "certificate of analyst" created by Curtis Caylor, the forensic

analyst with the New Mexico Department of Health, Scientific Laboratory Division, who tested Bullcoming's blood sample. *Id*. at 2710. Caylor's report affirmed "that '[t]he seal of th[e] sample was received intact and broken in the laboratory,' that 'the statements in [the analyst's block of the report] are correct,' and that he had 'followed the procedures set out on the reverse of th[e] report.'" *Id*. Caylor also represented "that no 'circumstance or condition . . . affect[ed] the integrity of the sample or . . . the validity of the analysis.'" *Id*. at 2714. On the day of trial, the prosecution announced it would not call Caylor "because he had 'very recently [been] put on unpaid leave' for a reason not revealed." *Id*. at 2711–12. Instead, the prosecution called another scientist who had neither observed nor reviewed Caylor's analysis. *Id*. at 2712. Over Bullcoming's objection, the trial court admitted the report as a business record and Bullcoming was found guilty. *Id*. The Supreme Court held Bullcoming's confrontation rights were violated when the prosecution was allowed to introduce the testimonial statement of Caylor into evidence, through the testimony of another person. *Id*. at 2713. Relying on *Melendez-Diaz*, the Court observed that "[a]n analyst's certification prepared in connection with a criminal investigation or prosecution . . . is 'testimonial,' and therefore within the compass of the Confrontation Clause." *Id*. at 2713–14.

Here, appellee proffered arguments at the motion to suppress hearing similar to ones previously rejected by this court. *See Boutang v. State*, 402 S.W.3d 782 (Tex. App.—San Antonio 2013, pet. ref'd), *cert. denied*, No. 13-8406, 2014 WL 318568, at *1 (May 19, 2014); *Mitchell*, 419 S.W.3d at 662. In *Boutang*, appellant argued the trial court violated her rights under the Confrontation Clause by allowing the testimony of Deborah Stephens, the Senior Forensic Scientist and Technical Supervisor with the Bexar County Breath Testing Program, who replaced George McDougall after his retirement. *Boutang*, 402 S.W.3d at 785. Boutang argued that because McDougall was the person in charge of maintaining the machine used to administer her

breath test and reference solution used in it, McDougall "was the only witness who could provide evidence as to the proper functioning of the machine." *Id*. at 787. A majority panel of this court disagreed with Boutang's argument, noting that the only "statement" from McDougall was "a line noting 'reference predicted 0.080,'" and concluded this was not a testimonial statement. *Id*. at 788. The panel also noted Stephens "did not testify she prepared or created a report that was actually created by another analyst, nor was she certifying such a report based on the machine's results." *Id*. Rather, Stephens merely interpreted results from the machine's print-out. *Id*. The panel concluded Stephens's testimony did not violate Boutang's rights under the Confrontation Clause. *Id*. at 789.

In *Mitchell*, appellant asserted the trial court erred by admitting an alcohol analysis request form. *Mitchell*, 419 S.W.3d at 658. Citing *Bullcoming* and *Burch v. State*, Mitchell argued the request form was testimonial in nature, and the State's failure to call the nurse who performed the blood draw denied him the ability to cross-examine her; thus, violating the Confrontation Clause. *Id*. at 660. A panel of this court noted that the nurse who performed the blood draw did not perform any tests, and that the toxicologist who performed all tests was available for cross-examination. *Id*. at 662. The panel also noted "the request form did not contain any analysis, but simply started the chain of evidence sufficient to allow [the toxicologist] to testify as to the blood-alcohol levels in Mitchell's blood." *Id*. Without deciding whether the request form was testimonial, the panel concluded that because the analyst who performed all tests on Mitchell's blood testified and was cross-examined by the defense, the Confrontation Clause was not violated. *Id*.

Although this case differs from *Mitchell* because appellee argues Eley's testimony is necessary to establish that the proper procedures during the blood draw were used, the State asserted the toxicologist would have been able to address issues regarding the quality of the blood sample. In a similar situation, the Fourteenth Court of Appeals declined to extend the holdings of

*Bullcoming* and *Burch* "to a nurse who merely draws the blood, is not involved in the actual blood analysis, and does not provide any statement that appears within or accompanies the blood test results." *Adkins*, 418 S.W.3d at 861. The court held that when "[t]he analyst who tested appellant's blood and signed the report . . . certifying that appellant's [BAC] was above the legal limit" is available for cross-examination, the Confrontation Clause is not violated. *Id*. at 862.

We agree with the reasoning in *Adkins* and also decline to extend the holding in *Bullcoming* to a person who only performs a blood draw and has no other involvement in the analysis or testing of a blood sample. In this case, Eley performed only the blood draw. She was not involved in the analysis of the blood sample, and did not perform any tests. Nor was it alleged that Eley provided any statement that appeared within or accompanied the blood tests results. Although Eley completed an affidavit, the State did not seek to admit her affidavit into evidence. Additionally, the toxicologist who performed the blood test analysis and prepared the report certifying appellee's BAC was above the legal limit, will be available for cross-examination. Accordingly, we conclude appellee's rights under the Confrontation Clause will not be violated by the unavailability of the nurse who merely performed the blood draw.

## TEXAS RULE OF EVIDENCE 702

The parties also contest whether Texas Rule of Evidence 702 is an alternate theory on which the trial court could have found the blood draw was not reliable. The rule provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. Assuming, without deciding, that Eley's testimony would have been admissible under Rule 702, our case law is clear that with respect to blood tests, the expert who must satisfy the criteria in any particular case is the analyst who tests the blood sample, not the nurse who

performs the blood draw. *See Mata v. State*, 46 S.W.3d 902, 914–15 (Tex. Crim. App. 2001); *Adkins*, 418 S.W.3d at 863; *Subirias v. State*, 278 S.W.3d 406, 410–11 (Tex. App.—San Antonio 2008, pet. ref'd). Accordingly, because the toxicologist was available to testify regarding the reliability of the tests performed and had not yet been given the opportunity to do so, we conclude Rule 702 was not an alternate theory on which the trial court could have suppressed the results of appellee's blood test.

## CONCLUSION

We conclude the trial court erred in finding appellee's rights under the Confrontation Clause are violated without an opportunity to cross-examine Eley. We, therefore, reverse the trial court's order granting appellee's motion to suppress and remand for further proceedings consistent with this opinion.

Sandee Bryan Marion, Justice

PUBLISH